UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                      No. CR 17-1836 MV

AYUDANDO ALPHA, INC., SUSAN K.
HARRIS, SHARON MOORE, WILLIAM S.
HARRIS, CRAIG M. YOUNG,

      Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Bonnie Reeder and Michelle Federico's Motion of Representatives of the Putative Class of Victims to Intervene in this Action for Purposes of Obtaining Already-Produced Discovery [Doc. 409]. The government filed a Response, Doc. 412, and the movants filed a Reply. Doc. 415. Having considered the briefs and relevant law, and being otherwise fully informed, the Court finds that the Motion is not well-taken and must be denied.

## BACKGROUND

The conduct underlying this case involves a decade-long scheme by Susan Harris and her co-defendants, Sharon Moore, William Harris, and Craig Young, to embezzle over $11 million dollars from the trust accounts of nearly 1,000 disabled and special needs individuals that Ms. Harris' non-profit company, Ayudando Guardians, Inc., was supposed to be serving. The defendants used their position of public trust over their vulnerable clients, many of whom are individuals with intellectual or physical disabilities, severe mental illnesses, or catastrophic injuries, to steal money for their own extravagant use and enjoyment. All of the defendants in the

case have been sentenced, and the criminal case has been closed since July 15, 2021. As a result

of the criminal proceedings, the federal government took over Ayudando Guardians.

On December 14, 2022, two individual victims of the Ayudando Guardians, Bonnie Reeder

and Michelle Federico, filed a putative class action suit in New Mexico state court against counsel

for Ayudando Guardians, Corbin Hildebrandt. *Reeder v. Hildebrandt,* No. D-2-2-CV-2022-07504

(N.M. 2d. Jud. Dist. Ct. Dec. 14, 202). Doc. 409-1. The suit asserts claims of legal malpractice,

breach of fiduciary duty, and negligent and intentional misrepresentations. The allegations stem

from Mr. Hildebrandt's handling of a 2012 letter sent to him by an accountant conducting an audit

of Ayudando Guardians. Doc. 409 at 1. The accountant alerted Mr. Hildebrandt that the defendants

in this case were violating non-profit disclosure laws, using business American Express cards as

personal cards, making improper loans to themselves from the business, and were generally "using

the business as a family ATM." Doc. 185-2. In response to this letter, Mr. Hildebrandt brokered a

non-disclosure agreement with the accountant whereby the accountant agreed to turn over his

records and not criticize the Harrises or Ayudando Guardians in exchange for payment on the

$11,403.17 bill for his services. Doc. 185-3.

Ms. Reeder and Ms. Federico ("Movants") filed the instant motion in this Court, asserting

that in order to certify a class of all victims impacted by the fraud perpetrated by the defendants

from 2012 to 2017, they require certain documents that are in possession of the federal

government. To that end, on February 17, 2023, attorneys for the putative class of victims issued

and served a *Touhy* subpoena on the United States Attorney's Office (USAO) for the District of

New Mexico, along with a letter justifying the request and a proposed HIPAA-Qualified Umbrella

Protective Order. Docs. 409-2, 409-3, 409-4. The *Touhy* subpoena requested the following records:

I.      A document with the names and contact information of, and if available, the names and contact information of the present-day guardians of, all known clients/wards of

Ayudando Guardians Inc., or, if no such single document exists, then a collection of documents from which the same information can be obtained.

II.     All discovery produced by the Government under Fed. R. Crim. P. 16(a) to any Defendant in the federal criminal case number 17-CR-1836-MV/JFR.

III.     All documents associated with the aforementioned case 17-CR-1836 that were written by Corbin Hildebrandt, including email correspondence with the USAO.

IV.     Spreadsheets detailing the financial losses suffered by each client/ward of Ayudando Guardians Inc., and any materials prepared or curated by forensic accountants to support, substantiate, or explain the spreadsheet figures.

V.     All documents evidencing payments from Ayudando Guardians Inc., Susan Harris, Sharon Moore, William Harris, or Craig Young to either Corbin Hildebrandt, Corbin Hildebrandt, P.C., or another entity known to the USAO to be owned in whole or in part by Corbin Hildebrandt.

VI.     All emails, letters, and memoranda associated with the aforementioned case 17-CR-1836 and written before July 11, 2017 (the date of initiation of criminal proceedings against Ayudando Guardians Inc.) that indicate that they were sent, copied, or blind copied to Corbin Hildebrandt.

VII.     All financial records of Ayudando Guardians reflecting transactions made prior to July 11, 2017.

VIII.     All documents prepared by any forensic accountant working for or with the Federal Bureau of Investigation and transmitted to Assistant United States Attorneys Jeremy Pena, Brandon Fyffe, or Stephen Kotz in association with the aforementioned case 17-CR-1836.

Doc. 409 at 3-4.

On June 7, 2023, the USAO's office denied the *Touhy* request based on 28 C.F.R. § 16.26(b)(1), which prohibits the Department of Justice (the "Department")—to which the USAO belongs—from disclosing documents that would violate a statute. In particular, the USAO found that the disclosure of these documents was prohibited by the Privacy Act, 5 U.S.C. §552a(b). Instead of disclosing the documents, on May 13, 2024, the Department notified all of the Ayudando victims through the Department's Victim Notification System that the movants had filed a lawsuit to recover damages on behalf of clients of Ayudando Guardians. *Reeder v. United States,* 24-CV-227KWR-GBW (Doc. 24-1) (June 11, 2024). The letter contained the contact information for the law firm of Harrison & Hart, LLC, the attorneys who represent Movants in their civil lawsuit against Mr. Hildebrandt. *Id.*

Following this denial, Movants filed a claim under the Administrative Procedures Act ("APA"), arguing that the decision was arbitrary and capricious. *See Reeder v. United States,* 24-CV-227KWR-GBW (Doc. 21) (May 25, 2024). The Court denied their claim, finding that the Department reasonably declined to respond to the *Touhy* subpoena and that there was no procedural mechanism available for the Court to issue an order allowing disclosure under the Privacy Act. *Id.* (Doc. 30) (Aug. 23, 2024). Movants now seek to intervene in the criminal case against Ayudando Guardians and the individual defendants, and ask the Court to enter an order therein under §552a(b)(11) directing the government to provide Movants with the discovery already provided to the defendants in this matter pursuant to Rule 16 of the Federal Rules of Criminal Procedure.

**LEGAL STANDARD**

The Federal Rules of Criminal Procedure contain no mechanism for third party intervention in criminal proceedings. Nevertheless, "motions to intervene in criminal proceedings have been granted in limited circumstances where a third party's constitutional or other federal rights are implicated by the resolution of a particular motion, request, or other issue during the course of a criminal case." *United States v. Rosenschein,* No. 16-CR-4571, 2020 WL 2750247, at \*1 (D.N.M. May 27, 2020). For instance, courts sometimes permit the press to intervene in a criminal case where a decision to close criminal proceedings to the public may affect First Amendment rights. *See United States v. Carmichael,* 342 F. Supp. 2d 1070, 1072 (M.D. Ala. 2004) (collecting cases). Additionally, the Tenth Circuit has recognized that "persons affected by the disclosure of allegedly privileged materials may intervene in pending criminal proceedings and seek protective orders" barring or limiting the disclosure of such materials. *United States v. Feeney,* 641 F.2d 821, 824 (10th Cir. 1981). In general, courts have found that intervention should be allowed sparingly, and

only in instances in which a third party's constitutional or other federal rights are implicated. *Carmichael,* 342 F. Supp. at 1072; *United States v. Cox,* No. 14-CR-140, 2015 WL 13741738, at *3 (M.D. Fla. Oct. 7, 2015) ("[I]ntervention in a criminal case is an anomaly" and "the intervenor must have an important right at stake . . . and that right must be significant enough for society to value and protect.").

## DISCUSSION

Movants ask the Court to allow them to intervene in this criminal matter and to compel the government to provide them with Rule 16 discovery materials. The Court finds that intervention would be inappropriate because no federal or constitutional interests are implicated by the suit, there is no precedent for the type of intervention requested, and allowing intervention would circumvent the proper procedure for appeals of *Touhy* denials.

As outlined above, intervention in criminal matters is rare, and is generally only allowed where an important constitutional or federal interest is at stake. *Rosenschein,* 2020 WL 2750247, at *1; *see also United States v. Sikes,* No. 15-CR-3128, 2017 WL 25460, at *1 (D. Neb. Jan 3, 2017) (finding that a third party cannot intervene in a criminal matter "based on [the assertion] of a right created by state law"). The Court recognizes the gravity of the harm caused to the victims of the fraud perpetrated by Ayudando Guardians and is sympathetic to the plight of those who have not been able to recover their full losses. Nevertheless, the fact remains that the underlying case in this matter is a state civil lawsuit against Ayudando's attorney, Mr. Hildebrandt, for "legal malpractice, breach of fiduciary duty, and negligent and intentional misrepresentations." Doc. 409 at 1. Movants seek information about the Ayudando victims for the purpose of certifying a class of all victims impacted by the fraud so that they may recover losses caused by Mr. Hildebrandt's alleged malpractice and breach of fiduciary duty. Thus, the interests that the Movants seek to

5

vindicate arise from state law, and do not implicate any constitutional or federal rights. This fact alone prevents the Court from granting the extraordinary remedy of intervention in a criminal case. *Carmichael*, 342 F. Supp. 2d at 1073 ("[T]here is no precedent to suggest that intervention [in a criminal matter] is appropriate to pursue a private dispute."); *see also United States v. Collins,* No. 09-CR-155, 2013 WL 4780927, at *2 (E.D. Wisc. Sept. 5, 2013) ("The fact that the civil case is factually related to the criminal case confers no right to intervention.").

Even if the underlying suit implicated constitutional or federal interests, there is still no precedent for the type of intervention Movants seek. Importantly, the motion fails to distinguish between *defensive* intervention, designed to prevent the disclosure of private information, and *offensive* intervention, in which intervenors seek to obtain discovery materials for a private suit. As the motion points out, the Tenth Circuit has held that, generally, individuals affected by the disclosure of potentially privileged materials may intervene in criminal matters to seek protective orders. *Feeny,* 641 F.2d at 824. In other words, intervention is generally appropriate when used as a defensive mechanism against the disclosure of otherwise protected private information. There is no Tenth Circuit case, and indeed the Court has been unable to find *any* federal case, where a court has allowed for *offensive* intervention, as requested by Movants here, for the purpose of obtaining discovery for a separate civil suit. Indeed, courts generally reject this type of intervention. *See Collins,* 2013 WL 4780927, at *2 (denying an offensive motion to intervene where movant sought the disclosure of confidential information to use as evidence in civil state suit); *Sikes,* 2017 WL 25460, at *1 (affirming magistrate judge's denial of motion to intervene because movant sought to use offensive intervention to obtain discovery for use in a civil case).

The Court recognizes that Movants are faced with the uniquely difficult circumstance of seeking discovery from the Department rather than from the defendant in a state civil suit.

6

However, intervention is not the proper vehicle for relief following a federal agency's denial of a *Touhy* subpoena. *See, e.g., COMSAT Corp. v. Nat'l Sci. Found.,* 190 F.3d 269, 274 (4th Cir. 1999) ("When the government is not a party, the APA provides the sole avenue for review of an agency's refusal to permit its employees to comply with subpoenas."); *Am. W. Bank Members, L.C. v. Utah,* No. 16-cv-326, 2021 WL 5384840, at *5 (D. Utah Nov. 18, 2021) ("[I]f [plaintiff] wishes to dispute the FDIC's *Touhy* disclosure decisions, it must do so in an APA proceeding."). Movants have already sought the very same relief through the proper channels by appealing the Department's decision under the APA, and their request for relief was denied by this Court in *Reeder v. United States,* 24-CV-227KWR-GBW (Doc. 30) (Aug. 23, 2024). If the Court were to now permit intervention, it would fly in the face of longstanding and widespread precedent under the APA, as explained in this Court's denial of the Movants' APA claim.

In *Reeder,* the Court carefully analyzed the Department's decision to deny the *Touhy* subpoena and found that, under the APA, it was neither arbitrary nor capricious. *Id.* at 18. ("The administrative record reveals that (i) the Department conducted a through and rational analysis of the *Touhy* request, (ii) the Department relied only on the factors that Congress intended it to consider under both the Privacy Act and the Housekeeping Act, (iii) the Department considered all important aspects of the *Touhy* requests, (iv) and did not offer an explanation that is counter to the evidence before it."). In denying the Movants' APA claim, the Court relied on well-established precedent requiring district courts to uphold policy determinations by federal agencies as long as the agency has articulated a rational basis for the decision and has considered relevant factors. *Id.* at 5 (citing *Wolfe v. Barnhart,* 446 F.3d 1096, 1100 (10th Cir. 2006); *Wyoming v. USDA,* 661 F.3d 1209, 1227 (10th Cir. 2011); *Copar v. Pumice Co., Inc. v. Tidwell,* 603 F.3d 780, 793 (10th Cir. 2010); *Kobach v. U.S. Election Assistance Comm'n,* 772 F.3d 1183, 1197 (10th Cir. 2014)). Were

the Court to grant the instant motion, it would render its decision under the APA meaningless, and potentially open the floodgates for other similarly situated plaintiffs whose *Touhy* subpoenas have been denied to circumvent long-established precedent.

Because the Court finds that intervention is inappropriate, it need not address Movants' arguments regarding the Privacy Act or its standing to represent putative class members. Additionally, the Court notes that Movants have not been left entirely without remedy. The Department sent a letter to all of the victims of Ayudando Guardians notifying them of the class action lawsuit, and provided the contact information for Movants' counsel. While Movants believe that the letter was insufficient, this is a matter beyond the scope of this Court's jurisdiction.

## CONCLUSION

Intervention is not warranted under the circumstances presented in this motion because there are no federal or constitutional interests involved, there is no precedent for the type of relief requested here, and allowing intervention would permit movants to circumvent the proper avenues for relief following denials of *Touhy* subpoenas. Accordingly, the motion must be denied.

**IT IS ORDERED** that Bonnie Reeder and Michelle Federico's Motion of Representatives of the Putative Class of Victims to Intervene in this Action for Purposes of Obtaining Already-Produced Discovery [Doc. 409] is **DENIED**.

ENTERED this 18th day of October 2024.

_____
MARTHA VAZQUEZ
SENIOR UNITED STATES DISTRICT JUDGE